# EXHIBIT 1

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts <br>The Superior Court |
|---|---|---|
| | | COUNTY: Hampden |

**Plaintiff:** Springfield Water and Sewer Commission
**ADDRESS:**

**Defendant:** ACE AMERICAN INSURANCE COMPANY
**ADDRESS:**

**Plaintiff Attorney:** John T. Liebel, 73 Chestnut St.
**ADDRESS:** Springfield, MA 01103 Ph. 413-781-1004
& John B. Stewart, 20 Maple St. #301, Springfield, MA 01103
**BBO:** JTL 299660   JBS 551180

**Defendant Attorney:**
**ADDRESS:**
**BBO:**

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A06 | Insurance Contract | F | [X] YES  [ ] NO |

*If "Other" please describe:

**Is there a claim under G.L. c. 93A?**  [X] YES  [ ] NO
**Is there a class action under Mass. R. Civ. P. 23?**  [ ] YES  [ ] NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date
   1. Total hospital expenses
   2. Total doctor expenses
   3. Total chiropractic expenses
   4. Total physical therapy expenses
   5. Total other expenses (describe below)

   Subtotal (1-5): **$0.00**

B. Documented lost wages and compensation to date
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

TOTAL (A-F): **$0.00**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

### CONTRACT CLAIMS

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Breach of Contract -- Appx. $2.93M cost of repairs and appx. $500,000 in professional services, owed under insurance policy | Appx. $3.5M |
| | | Total |

Signature of Attorney/Unrepresented Plaintiff: X  /s/ John B. Stewart   Date: 8-22-21

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.
Hampden Super. Ct. CA#20-364, SWSC v. Ludlow Const. Co. , Inc., et al.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X  /s/ John B. Stewart   Date: 8-22-21

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

| Code | Description | Track |
|---|---|---|
| AA1 | Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 | Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 | Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 | Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 | Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| Code | Description | Track |
|---|---|---|
| A01 | Services, Labor, and Materials | (F) |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A04 | Employment Contract | (F) |
| A05 | Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 | Insurance Contract | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A14 | Interpleader | (F) |
| BA1 | Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 | Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 | Shareholder Derivative | (A) |
| BB2 | Securities Transactions | (A) |
| BC1 | Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 | Intellectual Property | (A) |
| BD2 | Proprietary Information or Trade Secrets | (A) |
| BG1 | Financial Institutions/Funds | (A) |
| BH1 | Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 | Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| Code | Description | Track |
|---|---|---|
| D01 | Specific Performance of a Contract | (A) |
| D02 | Reach and Apply | (F) |
| D03 | Injunction | (F) |
| D04 | Reform/ Cancel Instrument | (F) |
| D05 | Equitable Replevin | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Shareholder's Suit | (A) |
| D09 | Interference in Contractual Relationship | (F) |
| D10 | Accounting | (A) |
| D11 | Enforcement of Restrictive Covenant | (F) |
| D12 | Dissolution of a Partnership | (F) |
| D13 | Declaratory Judgment, G.L. c. 231A | (A) |
| D14 | Dissolution of a Corporation | (F) |
| D99 | Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party †

| Code | Description | Track |
|---|---|---|
| PA1 | Contract Action involving an Incarcerated Party | (A) |
| PB1 | Tortious Action involving an Incarcerated Party | (A) |
| PC1 | Real Property Action involving an Incarcerated Party | (F) |
| PD1 | Equity Action involving an Incarcerated Party | (F) |
| PE1 | Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| Code | Description | Track |
|---|---|---|
| B03 | Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 | Other Negligence - Personal Injury/Property Damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice - Medical | (A) |
| B07 | Malpractice - Other | (A) |
| B08 | Wrongful Death - Non-medical | (A) |
| B15 | Defamation | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury - Slip & Fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| BE1 | Fraud, Business Torts, etc. | (A) |
| B99 | Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| Code | Description | Track |
|---|---|---|
| S01 | Summary Process - Residential | (X) |
| S02 | Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| Code | Description | Track |
|---|---|---|
| C01 | Land Taking | (F) |
| C02 | Zoning Appeal, G.L. c. 40A | (F) |
| C03 | Dispute Concerning Title | (F) |
| C04 | Foreclosure of a Mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| Code | Description | Track |
|---|---|---|
| E18 | Foreign Discovery Proceeding | (X) |
| E97 | Prisoner Habeas Corpus | (X) |
| E22 | Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| Code | Description | Track |
|---|---|---|
| E15 | Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 | Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| Code | Description | Track |
|---|---|---|
| E02 | Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 | Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E06 | Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 | Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 | Appointment of a Receiver | (X) |
| E09 | Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 | Summary Process Appeal | (X) |
| E11 | Worker's Compensation | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 | Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 | Pleural Registry (Asbestos cases) | |
| E94 | Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 | Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 | Other Administrative Action | (X) |
| Z01 | Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 | Appeal Bond Denial | (X) |

### SO Sex Offender Review

| Code | Description | Track |
|---|---|---|
| E12 | SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 | SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| Code | Description | Track |
|---|---|---|
| E19 | Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 | Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

**A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.**
**FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY**
**MAY RESULT IN DISMISSAL OF THIS ACTION.**

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| HAMPDEN, SS. | SUPERIOR COURT<br>CIVIL ACTION NO. |

SPRINGFIELD WATER AND )
SEWER COMMISSION, Plaintiff )
                                                       )
v.                                              )
                                                      )
ACE AMERICAN INSURANCE )
COMPANY, Defendant )

COMPLAINT AND DEMAND FOR JURY TRIAL

1.       The Plaintiff is the Springfield Water and Sewer Commission (hereinafter "SWSC"), is a duly organized water and sewer commission established and accepted under the authority of G.L. c. 40N, with authority to enter into contracts such as the policy of insurance issued by the Defendant, and to bring suit such as this relating to its properties and affairs, having a principal place of business located at 250 M Street Extension, Agawam, Massachusetts.

2.       The Defendant, ACE American Insurance Company (ACE"), is an insurance company organized and existing under the laws of the State of Pennsylvania with its principal place of business located at 436 Walnut Street, Philadelphia Pennsylvania.

3.       The Defendant issued a policy of insurance to the Plaintiff, policy No. EUTN14329869, which was in force at the time of the September 23, 2019, catastrophic failure of an Energy Dissipation Valve at the West Parish Filters Treatment Plant in Westfield, Massachusetts.

1

4.      The Energy Dissipation Valve had been installed between May and August of 2019, and was placed in service by SWSC's contractors on September 3, 2019.

5.      On September 20, 2019, there was a loss of operational control of the Valve, and the failure was discovered three days later.

6.      The events leading up to the Plunger failure took place as follows.

7.      On August 5, 2019, SWSC's contractor, Ludlow Construction, filled and pressure tested the 42 inch pipeline at the West Parish Filters Treatment Plant, and all inspected joints were observed to be leak free.

8.      On August 14, 2019, the newly installed 30 inch Energy Dissipation Valve was started up and began in operation conducted by SWSC by Ludlow Construction. The Energy Dissipation Valve was operated from 0 to 54 percent open and tested in auto position.

9.      There were no noises observed besides the loud air admittance in operation. No vibrations, noises or concerns were observed or recorded.

10.     On September 3, 2019, the Energy Dissipation Valve was placed into full time service in Auto Mode.

11.     On September 4, 2019, a SWSC engineer noticed vibrations at Flow Meter & Plant Water Vaults near the Energy Dissipation Valve outlet works. The engineer recorded that it seemed a little more pronounced since startup, stagnant water in vault top holes can be seen shaking, what was observed did not trigger a concern at that time.

12.     On September 5, 2019, SWSC operations at the West Parish Filters location, received a "Plunger Control Valve positions deviation" alarm. The sedimentation basin was full at the time and the Valve was switched into Manual Mode.

13.     That day SWSC e-mailed its contractor, CDM Smith, for assistance with the SCAOA controls of the Energy Dissipation Valve as remote operations were not fully capable of starting, stopping and controlling the Valve.

14.     On September 12, 2019, the Energy Dissipation Valve was not able to hold 6 mgd trim set point when plant flow was lowered, it was placed into manual mode again by SWSC to allow for the lower flow requirement.

15.     That day the SWSC's chief engineer visiting the outlet works site, as part of another project, noticed air surging through the vent pipe, causing concerns of a possible obstruction in the vent or Valve.

16.     At that time, the Chief Engineer thought was there was a pulsing surge in the water leaving the fire hydrant adjacent to the meter pit, and he could feel vibration in the hydrant. As a result, he then sent an e-mail to CDM Smith about these observations and concern for the Valve operations, requesting a rapid reply.

17.     On September 13, 2019, the SWSC received an email form CDM Smith, its contractor, that it would investigate, and SWSC provided operating data from the West Parish Filters which indicated pulsing around 40 mgd, which was the approximate rate of operations when SWSC's Chief Engineer was on site the previous day, although others noticed the pulsing at other flow rates earlier that day.

3

18. CDM Smith then emailed SWSC to set up a time on Monday to open the Valve and operate in manual mode to see if fluctuations are seen when not in automatic, and provided some guidance to SWSC's West Parish Filters operators for the SCADA system flow controller and data historian for the Energy Dissipation Valve.

19. On September 17, 2019, the CDM Smith Project Engineer, carrying out the promised investigation, noticed banging noises in Outlet Chamber basement during his inspection of the Energy Dissipation Valve. The CDM Smith Engineer asked for flow trends from before and after the time he was on site.

20. On that date, the Energy Dissipation Valve was placed in manual mode up to 40 mgd, as requested by CDM Smith, to observe operations by CDM Smith and SW&SC Engineers.

21. On September 19, 2019, The CDM Smith SCADA Programmer worked on the remote operations of the Energy Dissipation Valve, while the SWSC's Chief Engineer and Senior Project Engineer visited 42 inch Outlet Valve site, noticing a pulsing noise emanating from the air vent. As a result, they told operations to increase and reduce the flow through the Valve to see if the Valve would operate smoother at a specific flow rate, and it was felt a lower flow rate had less surging, which was then discussed with CDM Smith.

22. On September 20, 2019, the Energy Dissipation Valve was operating manually with a steady flow at a rate of 25 million gallons per day when flow suddenly decreased by 9 million gallons per day before rapidly increasing. Air

4

surges and ground vibration were observed on that date (a Friday), and the Valve was left flowing at 25 million gallons per day through the weekend.

23. On September 23, 2019, SWSC observed loud noises and banging upstream from the Energy Dissipation Valve. Several leaks to the 42-inch water main were observed. Metal parts from the Energy Dissipation Valve were found downstream in the stilling basin.

24. On September 24, 2019, a meeting was held at West Parish Filters between SW&SC, CDM Smith, and Energy Dissipation Valve manufacturer's representative, and hydraulic experts to discuss events and initial findings.

25. Ultimately, SWSC commissioned a thorough investigation of the Energy Dissipation Valve failure, which cost approximately $500,000. Unfortunately, the investigation result was less than definitive, and the cause of the loss was framed as a "hypothesis."

26. The hypothesis provided by CDM Smith was that, as observed by SWSC personnel, there was significant noise, vibration and leakage at the time of the Valve failure. This may suggest the Valve was receiving insufficient air through the air admittance device, possibly contributing to the cavitation of the Valve and resulting vibration.  Accordingly, that vibration may have led to fasteners backing out of their threaded holes and eventually disassembly of the Valves internal components once the Energy Dissipation Valve was disconnected from the actuator, the Energy Dissipation Valves positioning in the pipeline could no longer be controlled and complete failure of the Energy Dissipation Valve occurred.

27.  The failure of the Energy Dissipation Valve has caused SWSC to incur significant professional fees in investigating what was damaged owing to the Plunger failure, to date those significantly exceed $500,000.

28.  The SWSC provided ACE with an investigation report provided by CDM Smith which noted significant damage to the prestressed concrete cylinder pipes upsteam of the Energy Dissipation Valve failure. These pipes had been inspected in 2012, and defects and damage to them then observed was repaired, evidencing that the damage to them seen after September 23, 2018, was likely caused by the Energy Dissipation Valve failure, and resultant surge in upstream pressure which damaged those pipes.

29.  The SWSC then engaged an engineering firm named AECOM to evaluate repairs needed to the raw water conveyance tunnel system caused by the Energy Dissipation Valve Failure, and AECOM's report was issued on April 8, 2021.

30.  In its report, AECOM determined that the following damage is likely related to the Energy Dissipation Value failure in September 2018:

a. Damaged mortar and cracked steel cylinder to new manways at locations 1A, 1B, 4, 6A, and 9;

b. Wire breaks at locations 4-22, 5-59, 5-57, 7-57 and 8-34;

c. Longitudinal cracks at Manway 6A P1-8 (14 foot cover), P1-13, P10-20, 10-22, 10-26 and 10-28;

d. Outlet piping at J11-20/22;

e. Cracked joint mortar at 143 joints;

f. Joint infiltration at 18 joints (J4-45/46, 4-46/47, J7-29/30, 7-37/38, 7-41/42, Manway 8/8-1, 8-20/21, 8-25/26 up to 8-42/43);

g. Joint opening on 7 joints (5-41/42, MH6/6-1, 6-51-52, 7-61/62, 8-13/14, 8-16/17, and 10-25/26;

h. Spalling and erosion at joints at 1-19/20 (fresh concrete), 1-26/27 (fresh concrete, debris at joint), 6-18/19, 6-23/24 (fresh concrete);

31. AECOM's report then developed a cost to repair estimate for those items listed above which totals $2,939,691, based on contractor quotes.

32. In sum, resulting from the backflow of water caused by the Energy Dissipation Valve failure, this caused cracks in the concrete pipes, spalling, and other damage which needs to be repaired immediately, along with investigatory costs and professional fees.

33. As a result of the Energy Dissipation Valve failure, the bypass water line had to be shut down, and since that time SWSC has been in a vulnerable state with no redundancy in its water lines supplying a population of 150,000 water customers, and as above SWSC must contract for and carry out $3 million in repairs.

34. The policy issued to Plaintiff, SWSC, was an "all risk" policy which provided coverage for "direct physical loss to [SWSC's] property from perils not otherwise excluded" subject to other terms in the policy.

35. The policy states that "[i]n the event of such direct physical loss or damage to any Property Insured at the Premises Described in the Declarations, and

7

such damage, without the intervention of any other independent cause, results in a sequence of events which causes physical damage to other Property Insured by this policy, then this policy will cover such resulting loss or damage."

36. SWSC has made demand that ACE immediately step up to its contractual, common-law, and statutory responsibilities and, at a minimum, make a significant advance payment so that work can begin on the water line repairs to restore the redundancy of the water system.

37. ACE has refused or neglected to make any payments due and owing under the insurance policy issued by it and full force at the time of the Energy Dissipation Valve failure.

38. ACE was put on notice of the loss and invited to inspections, which its representative did not attend.

39. ACE did not carry out an appropriate, sufficient and thorough investigation of the Plunger Value failure and SWSC's contractually owed policy benefits, and when SWSC pointed out that it had not carried out a sufficient investigation to date it took the position that it could not make any payments because its investigation had not been completed, while the reason its investigation had not been completed was due to ACE's own failure to investigate.

40. SWSC has acted in a fully cooperative manner throughout and has provided a complete database of information to ACE gathered in the CDM Smith and other investigations, as well as attempting to arrange for inspections which ACE demanded and then failed to follow through on.

8

41. It is SW&SC's position that for present purposes the cause of the loss is undermined, and accordingly is covered under its "all-risk" policy, viz.:

> A. PERILS INSURED:
> This policy insures against all risks of direct physical loss or damage to Property Insured from perils not otherwise excluded, subject to the terms and conditions of this policy. In the event of such direct physical loss or damage to any Property Insured at the Premises Described in the Declarations, and such damage, without the intervention of any other independent cause, results in a sequence of events which causes physical damage to other Property Insured by this policy, then this policy will cover such resulting loss or damage. Nothing in this clause shall be deemed to extend this insurance to property which is otherwise specifically excluded from coverages by the terms of this policy.

42. Given the policy's wide breadth of coverage under the "all risk" policy, ACE bears the burden of showing that SWSC's claim falls within an exclusion.

43. On November 24, 2020, SWSC sent a G.L. c. 93A demand letter to ACE, a true copy of which is attached hereto as EXHIBIT A and incorporated herein by reference.

44. On December 23, 2020, ACE, through its counsel, responded to the G.L. c. 93A demand by Response Letter, a true copy of which is attached hereto as EXHIBIT B and incorporated herein by reference.

45. In its response, ACE incorrectly stated it had not received full cooperation of SWSC, and interposed that as an excuse for its failure to carry out a reasonable investigation, and in the end made no offer of settlement and extended no advance payment requested.

46. Since the G.L. c. 93A demand, ACE has attempted to step up its investigation to make up for its insufficient and inadequate investigation, however it

9

has persisted in refusing to meet its obligations to pay policy benefits to SWSC, and is compelling SWSC to file suit and litigate its legal obligations, despite the fact its liability to pay damages is "reasonably clear" within the meaning of G.L. c. 176D.

### COUNT I—BREACH OF CONTRACT

47. SWSC repeats and realleges its previous allegations set forth in ¶¶ 1-46, supra.

48. SWSC had in force a policy of insurance issued by ACE, which provided policy benefits to pay for direct and consequential losses to its property unless excluded.

49. ACE has breached its obligations under the insurance policy issued to SWSC, and is in breach of contract and liable to SWSC for the policy benefits it purchased and paid-for, plus interest from the date of breach and its costs.

WHEREFORE, SWSC demands judgment against ACE in the amount of all damages proven to the jury at trial, interest and costs.

### COUNT II—G.L. c. 93A, § 11

50. SWSC repeats and realleges its previous allegations set forth in ¶¶ 1-49, supra.

51. ACE is engaged in trade or commerce in issuing insurance policies insuring property in Massachusetts, to Massachusetts insureds, subject to the laws of Massachusetts and regulation of the Massachusetts Division of Insurance.

52. ACE is under an obligation to carry out its claims adjustment function in good faith, and not to violate G.L. c. 93A or the claims adjustment prohibitions set

forth in G.L. c. 176D, § 3(9).

53. In its conduct with respect to SWSC's claim for policy benefits under its policy issued by ACE, ACE has violated engaged in unfair claim settlement practices, by among other things as follows: ACE has failed to acknowledge and act reasonably promptly upon communications with respect to SWSC's claim, in violation of subpart (b) of that statute; ACE has failed to adopt and implement reasonable standards for the prompt investigation of SWSC's claim, in violation of subpart (c) of that statute,; ACE has refused to pay SWSC's claim without conducting a reasonable investigation based upon all available information, in violation of subpart (d) of that statute; ACE has failed to effectuate prompt, fair and equitable settlement of SWSC's claim in which liability has become reasonably clear, in violation of subsection (f) of that statute; ACE has compelled SWSC to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, in violation of subpart (g) of that statute; ACE has failed to settle SWSC's claim promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence payments under other portions of the insurance policy coverage; in violation of subpart (m) of that statute; ACE has failed to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a SWSC's claim or for the offer of a compromise settlement, in violation of subpart (n) of that statute.

54. These violations against ACE are enforceable by a claim under G.L. c.

11

93A, § § 9 and 11.

55. A reasonable investigation would have determined there is a high likelihood that ACE owes SWSC policy benefits for the Energy Dissipation Valve loss, and that SWSC's water pipes incurred significant damage from that loss as documented in the CDM Investigation Report.

56. In addition, since ACE requested that report, there is a distinct possibility that under the professional fees reimbursement coverage that ACE should be reimbursing SWSC for the $500,000 cost of producing that report.

57. ACE is liable on a contractual basis for over $4 million in damages, plus interest, and its failure to pay policy benefits and compel SWSC to sue and litigate when its liability is reasonably clear, with reason to know its conduct violates G.L. c. 93A, justifies the imposition of double or triple its actual damages, and SWSC's attorney's fees, costs, and interest.

WHEREFORE, SWSC demands judgment against ACE in the amount of all damages adjudged by the Court, plus double or treble damages, costs and attorney's fees.

DEMAND FOR JURY TRIAL

The Plaintiff, Springfield Water and Sewer Commission, demands a trial by jury on all claims and issues so triable.

SPRINGFIELD WATER AND SEWER
COMMISSION, Plaintiff

By /s/ John T. Liebel
JOHN T. LIEBEL (BBO #299660)

LAW OFFICE OF JOHN T. LIEBEL
73 Chestnut Street
Springfield, MA 01103
Ph: 413-781-1004
Fax: 413-736-2278
E-mail: john.liebel@verizon.net

By /s/ John B. Stewart
JOHN B. STEWART (BBO #551180)
MURPHY & MANITSAS, LLC
20 Maple Street, Suite 301
Springfield, MA 01103
Ph. (413) 206-9134
E-mail: TheTrialer@aim.com

13

# Envelope # 744831

## Envelope Information

**Envelope Id**
744831

**Submitted Date**
8/22/2021 7:02 PM EST

**Submitted User Name**
TheTrialer@aim.com

## Case Information

**Location**
Superior Court - Hampden

**Category**
Contract / Business Cases

**Case Type**
Insurance Contract

## Filings

**Filing Type**
EFile

**Filing Code**
Civil Action Cover Sheet

**Filing Description**
Civil Action Cover Sheet

**Filing on Behalf of**
Springfield Water and Sewer Commission

**Filing Status**
Submitting

### Lead Document

| File Name | Description | Security | Download |
|---|---|---|---|
| Superior Court Civil Action Cover Sheet_08-22-2021_1838.pdf | Superior Court Civil Action Cover Sheet_08-22-2021_1838.pdf | Public | Original File |

---

**Filing Type**
EFile

**Filing Code**
Complaint electronically filed

**Filing Description**
Plaintiff's Complaint and Demand for Jury Trial

**Filing on Behalf of**
Springfield Water and Sewer Commission

**Filing Status**

Submitting

## Lead Document

| File Name | Description | Security | Download |
|---|---|---|---|
| Complaint REV-2 081321.pdf | Complaint REV-2 081321.pdf | Public | Original File |

# Fees

### Civil Action Cover Sheet

| Description | Amount |
|---|---|
| Filing Fee | $0.00 |

**Filing Total:** $0.00

### Complaint electronically filed

| Description | Amount |
|---|---|
| Filing Fee | $0.00 |

**Filing Total:** $0.00

| | |
|---|---|
| Total Filing Fee | $0.00 |
| Court Case Fee | $275.00 |
| Payment Service Fee | $8.58 |
| E-File Fee | $22.00 |

**Envelope Total:** $305.58

| | | | |
|---|---|---|---|
| **Transaction Amount** | $305.58 | | |
| **Transaction Id** | 1015153 | | |
| **Filing Attorney** | John Stewart | **Order Id** | 000744831-0 |
| **Transaction Response** | Authorized | | |

© 2021 Tyler Technologies
Version: 2021.0.1.9538

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2179CV00441 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Springfield Water And Sewer Commission vs. Ace American Insurance Company | | Laura S Gentile, Clerk of Courts |
| TO:<br>John B Stewart, Esq.<br>Murphy and Manitsas, LLC<br>20 Maple St<br>Suite 301<br>Springfield, MA 01103 | | COURT NAME & ADDRESS<br>Hampden County Superior Court<br>Hall of Justice - 50 State Street<br>P.O. Box 559<br>Springfield, MA 01102 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                              **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/22/2021 | |
| Response to the complaint filed (also see MRCP 12) | | 12/21/2021 | |
| All motions under MRCP 12, 19, and 20 | 12/21/2021 | 01/20/2022 | 02/22/2022 |
| All motions under MRCP 15 | 12/21/2021 | 01/20/2022 | 02/22/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/21/2022 | | |
| All motions under MRCP 56 | 07/19/2022 | 08/18/2022 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/16/2022 |
| Case shall be resolved and judgment shall issue by | | | 08/23/2023 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | | PHONE |
|---|---|---|---|
| 08/23/2021 | Edward Partyka | | (413)735-6017 |